Receipt number AUSFCC-11508374

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

MARYLAND DEPARTMENT OF LABOR, WISCONSIN DEPARTMENT OF WORKFORCE DEVELOPMENT, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF DELAWARE, ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY, OFFICE OF THE GOVERNOR *EX REL.* ANDY BESHEAR, in his official capacity as Governor of the COMMONWEALTH OF KENTUCKY, MAINE DEPARTMENT OF LABOR, STATE OF MICHIGAN, NEW JERSEY DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT, NEW MEXICO DEPARTMENT OF WORKFORCE SOLUTIONS, NEW YORK STATE DEPARTMENT OF LABOR, OREGON EMPLOYMENT DEPARTMENT, PENNSYLVANIA DEPARTMENT OF LABOR AND INDUSTRY,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

Civ. No. 26-1505 C

**COMPLAINT**

1. This case is a breach-of-contract action arising from the U.S. Department of Labor (DOL)'s decision to unilaterally terminate competitive grants that were awarded to Plaintiffs for the purpose of modernizing certain information technology (IT) systems used to administer unemployment insurance (UI). Each grant award gave rise to binding contractual obligations between DOL and each Plaintiff, and Plaintiffs seek money damages resulting from DOL's breach.

2. These grants arose from the American Rescue Plan Act (ARPA) of 2021. ARPA funding was appropriated during and as a result of the COVID-19 pandemic, the economic impact

of which caused a historic surge in claims for unemployment insurance that strained states' often-outdated IT systems. The ARPA funding at issue here aimed at helping states modernize and otherwise improve their UI systems.

3. DOL awarded one or more of six related grants to Plaintiffs, who began performing or preparing to perform under corresponding grant agreements (the "Grant Agreements"). DOL's expressed goals for these UI modernization grants included the detection and prevention of fraud, promoting equitable access, and ensuring the timely payment of benefits.

4. On May 22, 2025, however, before the agreed-upon performance periods for these grants ended, DOL terminated all Plaintiffs' Grant Agreements via boilerplate letters. The letters stated that each Grant Agreement was "being terminated because it no longer effectuates [DOL's] priorities for its grant funding." DOL represented that the terminations were effective that day.

5. DOL's unilateral terminations breached the express terms of Plaintiffs' Grant Agreements, which allowed for termination only in narrow, specified circumstances. Nowhere did the Grant Agreements state that they could be terminated due to changes in agency priorities that occurred after the grants were executed. And even if they had, the underlying statute and regulations would not have permitted terminations on that basis. 2 C.F.R. 200.340(a)(2); 15 U.S.C. § 9034(a).

6. DOL's actions interfered with Plaintiffs' performance under the Grant Agreements and destroyed Plaintiffs' reasonable expectations regarding the fruits of their Grant Agreements.

7. By unilaterally cancelling the Grant Agreements without any lawful justification, DOL breached the express terms of the Grant Agreements and violated the covenant of good faith and fair dealing.

## JURISDICTION AND VENUE

8. Jurisdiction over the claims advanced in this case is proper in this Court pursuant to 28 U.S.C. § 1491 (the "Tucker Act").[1]

## PARTIES

### I. Plaintiffs

9. The Maryland Department of Labor is an agency of the State of Maryland, a sovereign state in the United States of America. *See* Md. Code Ann., Bus. Reg. § 2-101; Md. Code Ann., State Gov't § 8-201(b)(14). Maryland is represented by Anthony G. Brown, the Attorney General of Maryland. Md. Const. art. V., § 3; Md. Code Ann., State Gov't § 6-106(a). The Attorney General is authorized to pursue this action on behalf of the State of Maryland and/or the Maryland Department of Labor. *See* Md. Const. art. V, § 3(a)(2); Md. Code Ann., State Gov't § 6-106(b).

10. The Wisconsin Department of Workforce Development is an agency of the state of Wisconsin, a sovereign state in the United States of America. Wisconsin is represented by Joshua L. Kaul, the Attorney General of Wisconsin. Attorney General Kaul is authorized under Wis. Stat. § 165.25(1m) to pursue this action on behalf of the State of Wisconsin.

11. The State of California is a sovereign state of the United States of America. The California Employment Development Department ("EDD"), an executive agency of the State of California, is the recipient of California's UI Modernization Grants. California is represented by

---

[1] Plaintiffs file this action to obtain money damages for DOL's breach of the Grant Agreements, and do not waive any rights to challenge any agency action related to these Grant Agreements in any other forum. *See Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2660–62 (2025) (Barrett, J., concurring)

and through its Attorney General, Rob Bonta, who is the chief legal officer for California and is authorized to institute this action.

12. The State of Colorado is a sovereign state in the United States of America. Colorado's UI Modernization Grants recipient is the Colorado Department of Labor & Employment, an executive agency of the State of Colorado. Colorado is represented by and through its chief legal officer, Attorney General Philip J. Weiser.

13. The State of Delaware is a sovereign state of the United States of America. Delaware's UI Modernization Grants recipient is the Division of Unemployment Insurance of the Delaware Department of Labor, an executive agency of the State of Delaware. Delaware is represented by and through its Attorney General, Kathleen Jennings. The Attorney General is Delaware's chief law enforcement officer and is authorized to pursue this action pursuant to Del. Code Ann. tit. 29, § 2504, on behalf of the State.

14. The Illinois Department of Employment Security is an agency of the State of Illinois, a sovereign state of the United States of America. The Illinois Department of Employment Security is represented by and through its Attorney General Kwame Raoul. Attorney General Raoul is authorized to pursue this action under Illinois law. *See* 15 ILCS 205/4.

15. Kentucky's UI Modernization Grant recipient is the Kentucky Education and Labor Cabinet, an agency of the Commonwealth of Kentucky and part of the Kentucky Governor's General Cabinet and Executive Cabinet. KRS 11.060; KRS 11.065; KRS 12.020. The Education and Labor Cabinet receives federal funding to administer programs and activities to benefit the welfare of the state. The Kentucky Constitution makes the Governor the Chief Magistrate with the "supreme executive power of the Commonwealth," Ky. Const. § 69, and gives the Governor, and only the Governor, the duty to "take care that the laws be faithfully executed," Ky. Const. §

81. In taking office, Governor Beshear swears an oath that he will support the Constitution of the United States and the Kentucky Constitution. Ky. Const. § 228. In fulfilling his constitutional duties, the Governor must ensure that the Executive Branch of state government faithfully executes the laws. That includes ensuring Executive Branch agencies spend appropriated funds—both federal funds appropriated by the United States Congress and state funds appropriated by the Kentucky General Assembly—in line with the legislative intent and directive for those funds. Overseeing these Executive Branch cabinets allows the Governor to fulfill his constitutional duty to take care that the laws are faithfully executed. The Governor must ensure that federal funds that Congress has appropriated through federal law are allocated and spent according to the legislative intent and directive, including by defending against unconstitutional federal executive branch interference with that intent and directive.

16. The Maine Department of Labor (MDOL) is a department of the State of Maine created and established pursuant to 26 M.R.S. § 1401-A, and the recipient of Maine's UI Modernization grants. MDOL is represented by Aaron M. Frey, the Attorney General of Maine. The Attorney General is authorized to pursue this action pursuant to 5 M.R.S. § 191.

17. The State of Michigan is a sovereign state of the United States of America. Attorney General Dana Nessel, who is the chief law enforcement officer of Michigan, represents Michigan and its American Rescue Plan grant recipient, the Michigan Department of Labor and Economic Opportunity (MLEO), a principal department of the State of Michigan. *See* Mich. Comp. Laws § 125.1998.

18. The State of New Jersey is a sovereign state of the United States of America. The New Jersey Department of Labor and Workforce Development (NJDOL), an executive agency of the State of New Jersey, is the recipient of Grant Numbers (FAIN) 23A55UB000007,

23A60UB000028, and 23A60UB000107 from the U.S. Department of Labor. NJDOL is represented by and through the State of New Jersey's chief legal officer, Attorney General Jennifer Davenport.

19. The New Mexico Department of Workforce Solutions is an agency of the State of New Mexico, a sovereign state in the United States of America. *See* N.M. Stat. Ann. § 9-26-4. New Mexico is represented by Raul Torrez, Attorney General of New Mexico. N.M. Const. art. V., § 1; N.M. Stat. Ann. § 8-5-2. He is authorized to prosecute all actions and proceedings on behalf of New Mexico when, in his judgment, the interest of the State requires such action. N.M. Stat. Ann. § 8-5-2(B). Likewise, he shall appear before federal courts to represent New Mexico when, in his judgment, the public interest of the state requires such action. N.M. Stat. Ann. § 8-5-2(J).

20. The State of New York, a sovereign State of the United States of America, acting at all times herein relevant by and through its executive agency, the New York State Department of Labor, is represented by the New York Attorney General Letitia James. The Attorney General is New York State's chief law enforcement officer and is authorized under N.Y. Exec. Law § 63 to pursue this action.

21. The Oregon Employment Department is an agency of the State of Oregon, a sovereign state of the United States, and the recipient of Oregon's UI Modernization Grants. Oregon is represented by Attorney General Dan Rayfield. The Attorney General is the chief legal officer of Oregon and is authorized to institute this action.

22. The Pennsylvania Department of Labor and Industry is an agency of the Commonwealth of Pennsylvania that administers Pennsylvania's unemployment compensation

law. 43 P.S. §§ 751 et seq. Pennsylvania law permits the Office of General Counsel to represent executive agencies in litigation. 71 P.S. §§ 732-204(c), 732-301(6).

## II. Defendant

23. Defendant is the United States of America, acting through the United States Department of Labor—a cabinet-level agency within the executive branch of the United States government—and its Secretary Keith E. Sonderling.

## FACTUAL BACKGROUND

## I. Enactment of ARPA and Relevant Funding

24. On March 11, 2021, ARPA was signed into law. Pub. Law 117-2, 135 Stat. 4 (March 11, 2021).

25. One provision of ARPA provided $2 billion to support "fraud prevention, equitable access, and timely payment to eligible workers." 15 U.S.C. § 9034(a). The primary purpose of the funding was "to make grants to States or territories administering unemployment compensation programs," including through the "establishment of procedures or the building of infrastructure to verify or validate identity, implement Federal guidance regarding fraud detection and prevention, and accelerate claims processing or process claims backlogs due to the pandemic." *Id.* § 9304(b).

26. In 2023, Congress passed the Fiscal Responsibility Act of 2023, which reduced the funds available for disbursement. *See* Pub. Law 118-5, 137 Stat. 10, Sec. 124(B)(24) (June 3, 2023). Congress rescinded $1 billion in unobligated funds originally appropriated under ARPA's UI modernization grants program, leaving approximately $500 million in unobligated funds. *Id.* Though the amount of funding changed, the statutory purposes and uses for the funding remain unchanged.

## II. DOL Solicits Grant Applications

27. DOL initially solicited ARPA UI-modernization grant applications through multiple Unemployment Insurance Program Letters (UIPLs) announcing funding opportunities in 2021–2022. *See generally* UIPLs, *available at* DOL, *American Rescue Plan Act UI Modernization Grants Map*, https://www.dol.gov/agencies/eta/ui-modernization/modernization-grants-map (accessed Aug. 8, 2026)

28. Then, on July 13, 2023, DOL issued a program letter extending the funding opportunities. UIPL 11-23 (July 13, 2023), https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2023/UIPL%2011-23/UIPL%2011-23.pdf. That program letter explained how the COVID-19 pandemic revealed "deep vulnerabilities resulting from years of underinvestment" in unemployment insurance administration, as states saw a "huge influx of [unemployment insurance] claims" and an increased "frequency and complexity of fraud attacks." *Id.* at 2. The program letter further explained that DOL sought to "leverag[e] the remaining [ARPA] funds to support "meaningful transformation in the UI system so workers and the economy can continue to rely on it to deliver benefits and protect taxpayer dollars." *Id.* Specifically, DOL sought to direct "the available funds and Department-provided supports to states to address fraud prevention and system modernization." *Id.*

29. DOL solicited applications for the following categories of UI grants to help states modernize and otherwise improve their UI systems: (1) IT Modernization Grants, (2) Integrity Grants, (3) Navigator Grants, (4) Tiger Teams Grants, (5) Equity Grants, and (6) Fraud Prevention Grants.[2] *See* UIPLs, *supra*.

[2] DOL also solicited applications for Claimant Experience grants. These grants were to provide information on grant awards made to states selected to participate as "build and pilot" partners in the Claimant Experience Pilot and to provide information on how state workforce agencies can express interest in participating in future UI IT modernization pilots. *See* Training and Employment Notice No. 16-21 (Dec. 2, 2021),

30. Plaintiffs applied for and received these grants and administered them until they were abruptly terminated.

31. Defendants received multiple benefits from Plaintiffs' activities under these grant agreements. For instance, Plaintiffs' grant activities aimed at preventing and detecting fraud in UI claims helped prevent the improper use of federal UI funds. In addition, Plaintiffs' grant activities geared at improving the resiliency and user experience of UI systems helped ensure that UI systems would be more reliable in a crisis such as COVID-19, and that federal funds would be readily and appropriately utilized in all circumstances. And by requiring Defendants' approval of Plaintiffs' full project plans prior to any drawdowns, Defendants gained the benefit of substantial control over the scope and goals of Plaintiffs' grant projects.

**IT Modernization Grants**

32. On July 13, 2023, DOL announced a funding opportunity for states to invest in IT projects that support evidence-driven approaches to modernization that would increase the agility and resiliency of UI systems ("IT Modernization Grant"). UIPL 11-23, *supra*. Categories of projects under the IT Modernization Grant included: cloud migration, Modular and Application Programming Interface (API)–driven approaches; and/or measurable improvements in customer experience.

33. DOL's application process for the IT Modernization Grant consisted of two stages. DOL required an initial application, which included a Project Abstract describing the goals of the proposed project and how they aligned with the aim of modernizing UI systems. Then, within 90 days of receiving a Notice of Award, state applicants were required to submit a Full Project Plan. Applicants could not draw down funds until a grant officer had reviewed and approved the Full

---

https://www.dol.gov/sites/dolgov/files/ETA/advisories/TEN/2021/TEN_16-21.pdf. These funds were never rescinded or cancelled and are not at issue here.

Project Plan and had issued an amended Notice of Award (NOA) incorporating the Full Project Plan. Through this process, Defendants received the benefit of control over the direction and scope of the grant projects.

34. DOL awarded IT Modernization Grants to state workforce agencies in Maryland, Wisconsin, Illinois, Kentucky, New Jersey, New Mexico, and New York. Each IT Modernization Grant was in the amount of $11.25 million, except for New Mexico's which was in the amount of $6,012,676.

35. DOL subsequently approved those Plaintiffs' Full Project Plans and issued amended NOAs incorporating the Full Project Plans. The notices of award identify the performance period for each IT Modernization Grant as April 1, 2023, through September 30, 2028.

36. A true and correct copy of the September 22, 2023 NOA for Maryland's IT Modernization Grant is attached as Exhibit 1. The NOAs for the IT Modernization Grants awarded to the other States are substantially similar except for the name of the agency and—in the case of New Mexico—the amount awarded.

37. Plaintiffs who received the IT Modernization Grant then began performing. For example, Maryland's Department of Labor ("Maryland DOL") used grant funding to purchase laptops and software and engaged in a complex process to draft a comprehensive project blueprint, incorporating the goals of each of the ARPA grants in a unified project design. Maryland DOL was in the process of drafting a request for proposal to solicit contractors to implement Maryland DOL's blueprint when the contract was cancelled. Maryland DOL was therefore unable to issue the RFP and could not select a contractor to perform the work Maryland DOL had spent extensive time planning.

38. Upon receiving its IT-Modernization Grant, Wisconsin's Department of Workforce Development ("Wisconsin DWD") immediately contracted with a third-party IT vendor to build and modernize Wisconsin's UI employer portal. The project's goal was to create a state-of-the-art web-based and mobile solution to modernize the old employer portal with added functionality to improve communications between Wisconsin DWD and its customers for tax and wage reporting, employer information and support, unemployment insurance claims verification, and activities in support of appeals. Some of the most critical items in the modernization project were to secure communications, reduce fraud and document sharing and to increase efficient collaboration between employers and Wisconsin DWD.

39. Though the Wisconsin DWD's third-party IT vendor made substantial progress towards the new employer portal, after DOL unexpectedly terminated the IT Modernization Grant, Wisconsin DWD had to immediately halt work on the portal and it received no completed deliverables associated with the project.

40. State workforce agencies in Illinois, Kentucky, New Jersey, New Mexico, and New York used the IT Modernization grant for similar purposes and similarly forced to halt, terminate, or abandon projects—or reallocate funding from other sources to terminate those projects—when DOL terminated and left unexpended balances under the grant.

**<u>Integrity Grants</u>**

41. On July 13, 2023, DOL announced a funding opportunity to strengthen UI program integrity through ID verification, fraud prevention, improper payment reduction and overpayment recovery efforts in all programs ("Integrity Grant"). UIPL 11-23, *supra*.

42. DOL's application process for the Integrity Grant also consisted of two stages—the initial application followed by the submission of a Full Project Plan within 60 days of receiving the Notice of Award. Applicants could not draw down funds until the Full Project Plan had been received and approved and a DOL grant officer had issued an amended NOA incorporating the Full Project Plan. Through this process, Defendants received the benefit of control over the direction and scope of the grant projects.

43. DOL awarded Integrity Grants to state workforce agencies in Maryland, Wisconsin, California, Colorado, Delaware, Illinois, Kentucky, Maine, New Jersey, New Mexico, New York, Oregon, and Pennsylvania. The amount of each Integrity Grant varied between $869,000 (for New Mexico and Maine) to $3,479,750 (for California and New York).

44. DOL subsequently approved Plaintiffs' respective Full Project Plans and issued amended NOAs incorporating the Full Project Plans. The initial notices of awards generally identify the performance period for each Integrity Grant as April 1, 2023 through December 31, 2025, though some states had later start dates (e.g. Delaware's performance period began September 1, 2021) and others had later end dates (e.g. Illinois's agreed upon performance ends September 30, 2028).

45. A true and correct copy of the September 13, 2023 NOA for Maryland's Integrity Grant is attached as Exhibit 2. The NOAs for the Integrity Grants awarded to the other States are substantially similar except for the name of the agency, the amount awarded, and the period of performance.

46. Plaintiffs who received the Integrity Grant then began performing. For example, Maryland DOL used grant funds to support a contract with LexisNexis to implement fraud prevention and detection tools. Maryland DOL also used the grant funds to implement TrueID,

which helps to authenticate identity documents such as drivers' licenses, other state-issued IDs, and passports. Moreover, Maryland DOL used the grant to support implementation of National Identity Cerification Offering (NIDVO)—which provides states with access to online ID verification services—and explored additional biometric validation to address potential loopholes in the TrueID system.

47. Similarly, prior to termination, Wisconsin DWD used the Integrity Grant to fund projects designed to identify potential fraud and improve overpayment collection activities. Wisconsin DWD had planned to create a central repository to store information on fictitious employers, however, the fictitious employer database project was cancelled when DOL terminated the Integrity Grant. Wisconsin DWD reallocated funding from other sources to continue other projects under the grant.

48. State workforce agencies in California, Colorado, Delaware, Illinois, Kentucky, Maine, New Jersey, New Mexico, New York, Oregon, and Pennsylvania used Integrity Grant funds for similar purposes and were similarly forced to halt, terminate, or abandon projects—or reallocate funding from other sources to continue those projects—when DOL terminated and left unexpended balances under the grant. In addition, state workforce agencies were unable to realize efficiencies identified in project plans under the grants.

**<u>Navigator Grants</u>**

49. On January 31, 2022, DOL announced a funding opportunity for states to participate in the UI Navigator Program ("Navigator Grant"). UIPL 11-22 (Jan. 31, 2022), https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2022/UIPL_11-22.pdf. The purpose of the UI Navigator Program was to help workers learn about, apply for, and, if eligible,

receive UI benefits and related services (*i.e.*, navigate the UI program) and to support state agencies in delivering timely benefits to workers—especially workers who faced obstacles to accessing UI benefits in the past. Selected states were to partner with community-based organizations experienced in assisting UI claimants and/or unemployed job seekers to engage in activities that include outreach, training, education, and general assistance with completing applications for unemployment benefits, especially individuals in groups that are historically underserved, marginalized, and adversely affected by persistent poverty and inequality.

50. Plaintiffs submitted detailed applications, including a project narrative, statement of need, demonstration of organizational capacity, project design and project budget.

51. DOL awarded Navigator Grants to the state workforce agencies in Wisconsin, Maine, New Mexico, and Oregon. Wisconsin and Oregon received Navigator Grants in the amount of $3 million; New Mexico received one in the amount of $2,801,230; and Maine received one in the amount of $2,997,237. The performance period for the Navigator Grant was from June 15, 2022, through June 14, 2025.

52. A true and correct copy of the June 15, 2022 NOA for Wisconsin's Navigator Grant is attached as Exhibit 3. The NOAs for the Navigator Grants awarded to the other States are substantially similar except for the name of the agency and the amount awarded.

53. Plaintiffs who received these awards partnered with community-based organizations to support the timely delivery of benefits. For example, Wisconsin DWD entered an agreement with a non-profit organization subrecipient to assist individuals who recently became unemployed by providing them with support services through community resources to navigate the UI system. Wisconsin DWD cancelled the agreement and projects under the Navigator Grant when DOL terminated the grant.

54. State workforce agencies in Maine, New Mexico and Oregon used Navigator Grant funds for similar purposes and were similarly forced to halt, terminate, or abandon projects—or reallocate funding from other sources to continue those projects—when DOL terminated and left unexpended balances under the grant.

**Tiger Team Grants**

55. On November 2, 2021, and again on July 13, 2023, DOL announced a funding opportunity to support states in improving unemployment compensation systems and processes following a consultative assessment with a team of experts provided by DOL. UIPL 2-22 (Nov. 2, 2021), https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2021/UIPL_02-22.pdf; UIPL 11-23, *supra*. DOL required states to complete a consultative assessment of their unemployment compensation ("UC") program through which DOL leveraged a multi-disciplinary team of experts (i.e., Tiger Team) designed specifically to analyze state UC systems and process challenges. The Tiger Teams worked with states to identify areas to make actionable recommendations for the states to implement.

56. After DOL and applicant state workforce agencies agreed on which assessment recommendations to implement, states submitted an application including a project synopsis for each of the negotiated recommendations.

57. DOL awarded Tiger Team Grants to state workforce agencies in Wisconsin, California, Delaware, Illinois, Kentucky, Maine, Michigan, New Mexico, Oregon, and Pennsylvania. The amount of each Tiger Team Grant varied between $1 million (for Colorado) to $5,965,300 (for California). The period of performance for the Tiger Team Grants varied, with most beginning on April 1, 2022 and ending on December 31, 2025, though some were later (e.g. March 31, 2026 for Michigan).

58. True and correct copies of the April 15, 2022, September 15, 2023, and September 20, 2024 NOAs for Wisconsin's Tiger Team Grant are attached as Exhibit 4. The NOAs for the Tiger Team Grants awarded to the other States have a similar purpose to support states' specific UI system challenges..

59. Plaintiffs who received the Tiger Team Grant then began performing. For example, prior to termination, Wisconsin DWD used Tiger Team Grant funds to implement identity authentication and identity proofing tools. Wisconsin DWD used the grant to improve claimant portal workflows and knowledge base tools for its staff. Wisconsin DWD also used Tiger Team funds to modernize its portal design to include targeted messages to deter potential fraudsters. Wisconsin DWD had planned to enhance its adjudication case scheduler automation and central repository for all interactions on a claim when DOL terminated the grant and left unexpended balances under the award. Those projects were halted as a result.

60. State workforce agencies in California, Delaware, Illinois, Kentucky, Maine, Michigan, New Mexico, Oregon, and Pennsylvania used Tiger Team Grant funds for similar purposes and similarly were similarly forced to halt, terminate, or abandon projects—or reallocate funding from other sources to continue those projects—when DOL terminated and left unexpended funds under the grant.

**Equity Grants**

61. On August 17, 2021, DOL announced a funding opportunity for states to promote equitable access to unemployment compensation programs, including by eliminating administrative barriers to benefit application, reducing workload backlogs, improving timeliness of payments to eligible individuals, and ensuring equity in fraud prevention, detection and recovery

activities ("Equity Grant"). UIPL 23-21 (Aug. 17, 2021), https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2021/UIPL_23-21.pdf.

62. State workforce agency applicants submitted project applications that included an assessment of the problem or issue they wanted to address, an explanation of how their proposed use of funds would address the problem or issue, and the outcome metrics that would demonstrate the effectiveness of their actions in promoting program equity.

63. DOL awarded Equity Grants to state workforce agencies in Maryland, Wisconsin, California, Colorado, Delaware, Illinois, Kentucky, New Jersey, Maine, Michigan, New York, Oregon and Pennsylvania. The amount of each Equity Grant varied between $1,755,000.10 (for Delaware) to $9,120,000 (for California and New York). The performance period for the Equity Grant also varied, beginning as early as January 1, 2022 (for Oregon) and ending as late as March 31, 2026 for most others.

64. True and correct copies of the June 27, 2022 and February 7, 2024 NOAs for Maryland's Equity Grant are attached as Exhibit 5. The NOAs for the Equity Grants awarded to the other States are substantially similar except for the name of the agency, the amount awarded, and the period of performance.

65. Plaintiffs who received the Equity Grant began performing. For example, Maryland DOL began work to improve customer service, improve the functionality of the unemployment insurance system, and translate certain screens into Spanish. Maryland DOL purchased laptops and specialized software, and drafted a comprehensive project blueprint, incorporating the goals of each of the ARPA grants in a unified project design. Maryland DOL was in the process of drafting a request for proposal to solicit contractors, to implement Maryland DOL's blueprint, when the contract was cancelled.

66. Similarly, prior to termination, Wisconsin DWD used the Equity Grant to launch a worker misclassification website to build awareness and combat worker misclassification; implemented a data project to mask demographic information in instances where it is not needed for claim administration; and completed data structures to enable demographic data analysis as recommended by DOL. Wisconsin DWD had also planned to use Equity Grant funds to implement a modernized correspondence tool to facilitate effective written communication with all UI customers through an agile and efficient systems interface. The new tool would have made updates to standard correspondence less costly and required less staff resources. This project was halted by the termination of the Equity Grant.

67. State workforce agencies in California, Colorado, Delaware, Illinois, Kentucky, New Jersey, Maine, Michigan, New York, Oregon and Pennsylvania used Equity Grant funds for similar purposes and similarly were similarly forced to halt, terminate, or abandon projects—or reallocate funding from other sources to continue those projects—when DOL terminated and left unexpended funds under the grant.

**<u>Fraud Prevention Grants</u>**

68. On August 11, 2021, DOL announced a funding opportunity to support states with fraud detection and prevention, including identity verification and overpayment recovery activities ("Fraud Prevention Grant"). UIPL 22-21 (Aug. 11, 2021), https://www.dol.gov/sites/dolgov/files/ETA/advisories/UIPL/2021/UIPL_22-21.pdf.

69. On December 17, 2021, DOL awarded a Fraud Prevention Grant to state workforces agencies in Illinois and Maine. Illinois received a $3.684 million award and Maine received a $1.228 million award. The performance period for both Fraud Prevention Grants was from September 1, 2021, until August 31, 2025.

70. A true and correct copy of the June 5, 2023 NOA for Illinois' Fraud Prevention Grant is attached as Exhibit 6. The NOA for Maine's Fraud Prevention Grant is substantially similar except for the name of the agency, the amount awarded, and the period of performance

71. Prior to termination, Illinois Department of Employment Security (IDES) was utilizing the Fraud Prevention Grant funding to purchase and license fraud detection software and other integrity measures, implement cross-matches with Bureau of Prisons data, and develop an internal fraud risk dashboard and tools to address fraud when it was located. After termination, IDES diverted funding from other services to complete its projects under the Fraud Prevention Grant.

72. Prior to termination, Maine's Department of Labor was utilizing the grant to redesign its Employer Audit program. This project was intended to strengthen the state's ability to identify and prevent employer fraud, including worker misclassification, fictitious employers, and other fraudulent activity. Due to termination, Maine was unable to complete the planned redesign. Maine independently implemented new tracking and monitoring processes, using funding from alternative sources, to detect fictitious employers, but the broader redesign project could not be completed as planned.

## III. Terms and Conditions of Each Grant Agreement

73. Federal agencies are required to "clearly and unambiguously specify all termination provisions in the terms and conditions of the Federal award." 2 C.F.R. § 200.340(b).

74. For each Plaintiff's grant, the initial notice of award contained a lengthy explanation of the relevant terms and conditions applicable to the contract.

75. The terms and conditions set forth limited circumstances whereby DOL could properly terminate the contract. They stated that DOL could "unilaterally terminate this award" if the recipient or an employee "[e]ngage[d] in severe forms of trafficking in persons," "[p]rocure[d] a commercial sex act" or "[u]se[d] forced labor in the performance of the award[.]" *E.g.*, Ex. 1 at 23–25. And they stated that, "by drawing down funds, your organization as the award recipient agrees to the provisions of 2 CFR 200.521, 2 CFR 2900.20, and 2 CFR 2900.21 and is subject to having its award removed as a result of an ALJ [administrative law judge] decision. " *E.g.*, *id.* at 4.

76. The terms and conditions also stated that the award recipient "must operate in compliance with the[] revised [Uniform Guidance] regulations" promulgated by the Office of Management and Budget in 2020 and 2021. *E.g.*, Ex. 1 at 6. But the terms and conditions did not state that provisions of 2 C.F.R. parts 25, 170, 183, and 200 constituted permissible grounds for termination of the grant agreement.

77. Nor did the terms and conditions otherwise state that DOL could lawfully terminate the contract on the basis of the agency's changed internal priorities.

**IV. DOL Unilaterally Terminates Each Plaintiff's Grant Agreements**

78. On or around May 22, 2025, DOL abruptly and unilaterally terminated Plaintiff States' grants.

79. The rationale for DOL's termination was expressed in boilerplate letters to each Plaintiff.

80. True and correct copies of Maryland's termination notices for the IT Modernization, Integrity, and Equity Grants are attached as Exhibit 7. The termination notices

issued to the other States are substantially similar except for the name of the recipient and the identifying details of each grant.

81. Each letter stated that each grant was being terminated "[i]n accordance with 2 CFR 200.340(a)(2) . . . because it no longer effectuates [DOL's] priorities for its grant funding." *E.g.*, Ex. 7 at 1.

82. The letters further asserted:

> The Department is currently undergoing a comprehensive review of the uses of American Rescue Plan Act (ARPA) funding to ensure that the use of such funds is done in the most efficient and effective manner to achieve the objectives of ARPA, and in a manner that aligns with agency and administration priorities. After completing its review, the Department may consider new funding opportunities to achieve these objectives. Taking this action now allows the Department to maintain the flexibility to meet those objectives in alignment with administration and agency priorities.

*E.g.*, *id.*

83. The letter did not explain what DOL's new priorities were or why the grants did not "effectuate" those priorities.

84. On May 23, 2025, a DOJ spokesperson claimed that the grants were terminated because they "focused on equitable access."[3]

85. On or around June 24, 2025, DOL transmitted a document to Plaintiffs entitled "Grant Terms and Conditions (Additions and Deletions) Addendum," which purported to change the terms and conditions of numerous extant DOL grants.

86. A true and correct copy of the Grant Terms and Conditions (Additions and Deletions) Addendum is attached as Exhibit 8.

---

[3] *See* Natalie Alms, *Labor Cancels Unemployment Modernization Grants for States*, NEXTGOV (May 23, 2023), https://www.nextgov.com/modernization/2025/05/labor-cancels-unemployment-modernization-grants-states/405582/ (quoting a DOL spokesperson explaining the cancellations).

87. The document purported to add a new "Termination" section which stated that under "2 CFR 200.340, the Federal award may be terminated in part, or its entirety . . . [b]y DOL, to the greatest extent authorized by law, if the award no longer effectuates the program goals or agency priorities." Ex. 8 at 2.

88. DOL may not unilaterally alter the terms and conditions of existing contracts, and so this document had no force and effect on the previously terminated UI modernization grants. But it demonstrates that DOL understood its prior terms and conditions did not clearly and unambiguously specify that the termination conditions in 2 C.F.R. § 300.340 applied.

## V. DOL's Actions Harmed Plaintiffs

89. DOL terminated Plaintiff's Grant Agreements prior to the close of the performance period, leaving projects halted midstream and unspent balances under the original grant award.

90. After DOL sent the termination letters on May 22, 2025, it followed up with a modification of each Plaintiff's NOA to update the period-of-performance end date to May 22, 2025, for each grant.

91. A true and correct copy of DOL's May 23, 2025 modification of the NOA for Maryland's IT Modernization Grant is attached as Exhibit 9. DOL's modifications of the other NOAs are substantially similar except for the name of the agency, the amount awarded, and the period of performance.

92. All grants were closed out in the months following termination.

93. DOL's terminations thus prevented Plaintiff States from completing the specified modernization efforts under each of the grants, harming Plaintiff States.

94. For example, DOL awarded Wisconsin $31.86 million to modernize its UI systems and increase access to UI benefits. As of close-out of the grants on September 12, 2025 Wisconsin

DWD incurred expenses in the amount of $22 million of its awarded UI grants but had an unspent balance of approximately $10 million. Specifically:

a. Wisconsin DWD incurred expenses of approximately $8.2 million under its IT Modernization Grant and had an unspent balance of approximately $3 million.

b. Wisconsin DWD incurred expenses of approximately $500,000 under its Integrity Grant and had an unspent balance of approximately $2 million.

c. Wisconsin DWD incurred expenses of approximately $2 million under its Navigator Grant and had an unspent balance of approximately $1 million.

d. Wisconsin DWD incurred expenses of approximately $3.3 million under its Tiger Team Grant and had an unspent balance of approximately $1.2 million.

e. Wisconsin DWD incurred expenses of approximately $4.4 million under its Equity Grant and had an unspent balance of approximately $2.5 million.

95. DOL's termination of the UI modernization grants resulted in halted and canceled projects and prevented Wisconsin from realizing efficiencies for Wisconsin employers, workers, and staff that would have resulted from completion of the modernization projects.

96. Wisconsin is particularly harmed by the termination of the IT Modernization Grant. The $8.2 million Wisconsin DWD invested in the development and modernization of a new employer portal cannot be recouped or built upon. Because the third-party IT vendor was unable to complete the work, the vender was unable to provide Wisconsin DWD with any deliverables. To implement the project approved in Wisconsin DWD's IT Modernization Full Project Plan, Wisconsin DWD would have to hire a new vendor and start from scratch.

97. Likewise, DOL awarded approximately $20.7 million to Maryland DOL in the above-cited grants to modernize its UI systems. As of May 22, 2025, Maryland DOL had

expended $1.2 million of the awarded UI modernization grants but had an unspent balance of approximately $19.5 million. Specifically:

a. Maryland DOL expended approximately $25,000 of its $11.25 million IT Modernization Grant and had an unspent balance of approximately $11.25 million.

b. Maryland DOL expended approximately $394,000 of its $6.8 million Equity Grant and had an unspent balance of approximately $6.4 million.

c. Maryland DOL expended approximately $775,000 of its $2.6 million Integrity Grant and had an unspent balance of approximately $1.8 million.

98. DOL's termination of the UI modernization grants resulted in halted and canceled projects and prevented Maryland from realizing efficiencies for Maryland employers, workers, and staff that would have resulted from completion of the modernization projects.

99. DOL's termination of UI modernization grants has similarly prevented all other Plaintiffs from realizing efficiencies for their employers, workers, and staff that would have resulted from completion of the modernization projects. Other Plaintiffs similarly had unexpended grant funds at the time DOL terminated these grants. Other Plaintiffs similarly halted, terminated, or abandoned projects. Other Plaintiffs were forced to reallocate funding from other projects to the detriment of those other priorities and needs in order to complete projects after DOL abruptly terminated the Grant Agreements.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of the Grant Agreements

100. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

101. To recover for breach of contract, Plaintiffs must establish four elements: "(1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989).

102. Each Grant Agreement is a binding contract that contemplates money damages.

103. Each Grant Agreement was entered into by DOL officials with authority to bind the United States.

104. DOL breached the express terms of each Plaintiff's grant agreement by wrongfully terminating each Grant Agreement.

105. Each Grant Agreement contained a provision by which the DOL agreed to make a specified amount of federal funds available to the respective Plaintiff for specified unemployment insurance modernization efforts.

106. In each Notice of Award, DOL and Plaintiffs mutually agreed to limit their unilateral termination rights to narrow situations involving criminal conduct, namely those involving sex trafficking, prostitution, and forced labor. DOL also provided for removal of the award by an ALJ, following a formal audit.

107. The bases for DOL's termination of the Grant Agreements here did not include any of these circumstances.

108. Instead, DOL wrongfully terminated each Grant Agreement pursuant to 2 C.F.R. § 200.340, due to purportedly changed agency priorities.

109. DOL's unilateral terminations breached the express terms of each of the Plaintiffs' Grant Agreements because DOL had to "clearly and unambiguously specify all termination provisions in the terms and conditions of the Federal award," 2 C.F.R. § 200.340(b), and the terms

and conditions in each of those Grant Agreements did not "clearly and ambiguously " allow DOL to terminate on the basis of changed agency priorities under 2 C.F.R. § 200.340(a)(4) (the only claimed termination authority in DOL's April 25, 2025, termination letter).

110. DOL's breach of each Plaintiff's grant agreement has caused each Plaintiff to suffer damages in an amount to be determined at trial.

**COUNT II (IN THE ALTERNATIVE)**
**Breach of Agreements Contrary to 2 C.F.R. § 200.340**

111. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

112. The Grant Agreements' terms and conditions did not clearly and unambiguously incorporate 2 C.F.R. § 200.340 and that provision cannot therefore be a lawful basis for the terminations. *See* Count I. In the alternative, to the extent 2 C.F.R. § 200.340 were clearly and unambiguously incorporated into the terms and conditions of the Grant Agreements, that provision still would not provide a lawful basis for termination.

113. That is, 2 C.F.R. § 200.340(a)(2) does not allow agencies to terminate grants on the basis of changed priorities when the change in priorities post-dates the contract. *See New Jersey v. U.S. OMB*, No. 25-cv-11816, 2026 WL 2069832 (D. Mass.) (holding 2 C.F.R. § 200.340(a)(4) (2024) and 2 C.F.R. § 200.340(a)(2) (2021) do not allow terminations of awards based on new program goals or agency priorities an agency identifies after granting the award).

114. The relevant clause states that agencies may terminate a grant if an award "no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4) (2024); 2 C.F.R. § 200.340(a)(2) (2021). That clause allows only for termination where a grant "no longer" promotes "the program goals" that were in place at the time the grant was awarded. By contrast, the clause does not permit implementation of new priorities and cancellation of grants for failure

to promote such post-hoc goals. DOL's actions accordingly would still constitute an unlawful breach of contract even if 2 C.F.R. § 200.340(a)(4) could be read into the Grant Agreement terms and conditions.

115. DOL's breach of each Plaintiff's Grant Agreement has caused each Plaintiff to suffer damages in an amount to be determined at trial.

**COUNT III (IN THE ALTERNATIVE)**
**Breach of Grant Agreements Contrary to 15 U.S.C. § 9034(a)**

116. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

117. In addition, also in the alternative to Count I, to the extent 2 C.F.R. § 200.340 were clearly and unambiguously incorporated into the terms and conditions of the Grant Agreements, that provision still would not provide a lawful basis for termination, because DOL's changed priorities are contrary to the governing statute.

118. That is, 2 C.F.R. § 200.340(a)(2) only permits termination "to the extent authorized by law," and the relevant statute explicitly requires DOL grants to support "fraud prevention, equitable access, and timely payment to eligible workers." 15 U.S.C. § 9034(a). While DOL apparently terminated the Grant Agreements because of their alleged support of "equitable access,"[4] Congress expressly provided for such support in the statute.

119. Accordingly, DOL's priority of opposing "equitable access" where the statute required it exceeded its authority and would constitute an unlawful breach even if 2 C.F.R. § 200.340(a)(2) applied here.

---

[4] *See* Alms, *supra* (quoting a DOL spokesperson explaining the cancellations).

120. DOL's breach of each Plaintiff's grant agreement has caused each Plaintiff to suffer damages in an amount to be determined at trial.

**COUNT IV**
**Breach of the Duty of Good Faith and Fair Dealing**
**Imposition of New Terms and Conditions**

121. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

122. "Every contract, including one with the federal government, imposes upon each party an implied duty of good faith and fair dealing in its performance and enforcement." *Dobyns v. United States*, 915 F.3d 733, 739 (Fed. Cir. 2019) (citing *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014)) (other citation omitted).

123. The implied duty of good faith and fair dealing "includes 'the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract.'" *Id.* (quoting *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005)).

124. Each Grant Agreement is a binding contract that contemplates money damages.

125. Each Grant Agreement was agreed to by DOL officials with authority to bind the United States.

126. Each Grant Agreement contained a provision by which the DOL agreed to make a specified amount of federal funds available to the respective Plaintiff for specified unemployment insurance modernization efforts.

127. Plaintiffs entered into the Grant Agreements with DOL with the reasonable expectation that the DOL would comply with the terms of the Grant Agreements and that DOL would act in good faith and deal fairly with Plaintiffs.

128. DOL breached the Grant Agreements' implied duty of good faith and fair dealing.

129. DOL breached this implied duty in several ways, including but not limited to the following actions.

130. DOL wrongfully imposed new terms and conditions on Plaintiffs.

131. Specifically, DOL purported to rely on 2 C.F.R. § 200.340(a)(4) as the source of its authority for unilateral termination, when that provision was never clearly and unambiguously cited in the relevant terms and conditions, as required by 2 C.F.R. § 200.340(4).

132. DOL's actions interfered with Plaintiffs' performance under the Grant Agreements and destroyed Plaintiffs' reasonable expectations regarding the fruits of their Grant Agreements.

133. Upon information and belief, DOL's actions were intended to interfere with Plaintiffs' operation of their modernization efforts despite lacking any legal authority to do so.

134. DOL's actions caused Plaintiffs to suffer substantial damages in an amount to be determined at trial.

**COUNT V**
**Breach of the Duty of Good Faith and Fair Dealing**
**Erroneous and Bad Faith Interpretation of Regulations**

135. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

136. DOL also breached the duty of good faith and fair dealing by relying on an erroneous and bad faith interpretation of relevant regulations. Specifically, DOL cited 2 C.F.R. § 200.340(a)(4) in unilaterally terminating Plaintiffs' grant agreements. But that provision does not plausibly authorize unilateral termination of existing government contracts based on changes in agency priorities that occur after formation of the contract. *See New Jersey*, 2026 WL 2069832.

137. DOL's actions interfered with Plaintiffs' performance under the Grant Agreements and destroyed Plaintiffs' reasonable expectations regarding the fruits of their Grant Agreements.

138. Upon information and belief, DOL's actions were intended to interfere with Plaintiffs' operation of their modernization efforts despite lacking any legal authority to do so.

139. DOL's actions caused Plaintiffs to suffer substantial damages in an amount to be determined at trial.

**COUNT VI**
**Breach of the Duty of Good Faith and Fair Dealing**
**Erroneous and Bad Faith Interpretation of Statutes**

140. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

141. DOL also breached the duty of good faith and fair dealing by relying on an erroneous and bad faith interpretation of authorizing statutes. Upon information and belief, DOL targeted Plaintiff's grants for termination because they purportedly "focused on equitable access." However, the law authorizing these grant agreements, 15 U.S.C. § 9034(a), explicitly directed DOL to use the money "to detect and prevent fraud, *promote equitable access*, and ensure the timely payment of benefits with respect to unemployment compensation programs." (emphasis added).

142. DOL's actions interfered with Plaintiffs' performance under the Grant Agreements and destroyed Plaintiffs' reasonable expectations regarding the fruits of their Grant Agreements.

143. Upon information and belief, DOL's actions were intended to interfere with Plaintiffs' operation of their modernization efforts although DOL lacked any legal authority to do so.

144. DOL's actions caused Plaintiffs to suffer substantial damages in an amount to be determined at trial.

**COUNT VII**
**Breach of the Duty of Good Faith and Fair Dealing**
**Failure to Provide Required Process Before Termination**

145. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

146. DOL also breached the duty of good faith and fair dealing by failing to provide Plaintiffs with formal notice and an opportunity to object to their grant terminations.

147. For instance, under 2 C.F.R. § 2900.20(a), DOL "employs a collaborative resolution process with non-federal entities," such that when any issues are identified via an audit, "audit resolution includes at a minimum an initial determination, an informal resolution period, and a final determination." DOL failed to accord Plaintiffs any of these process steps, or any comparable notice and opportunity to object to termination here.

148. DOL's actions interfered with Plaintiffs' performance under the Grant Agreements and destroyed Plaintiffs' reasonable expectations regarding the fruits of their Grant Agreements.

149. Upon information and belief, DOL's actions were intended to interfere with Plaintiffs' operation of their modernization efforts despite lacking any legal authority to do so.

150. DOL's actions caused Plaintiffs to suffer substantial damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court enter judgment against the United States as follows:

i. Awarding money damages to Plaintiffs in an amount to be determined at trial;

ii. Awarding any allowable pre- and post-judgment interest;

iii. Awarding Plaintiffs their reasonable fees, costs, and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 2412; and

iv. Granting other such relief as this Court may deem proper.

Dated: October 8, 2026

Respectfully submitted,

**ANTHONY G. BROWN**
ATTORNEY GENERAL OF MARYLAND

By: /s/ *Keith M. Jamieson*
Keith M. Jamieson
*Assistant Attorney General*
Michael Drezner
*Senior Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland 21202
(410) 576-6960
kjamieson@oag.maryland.gov
mdrezner@oag.maryland.gov

*Counsel for Maryland Department of Labor*

**JOSHUA L. KAUL**
ATTORNEY GENERAL OF WISCONSIN

By: /s/ *Frances Reynolds Colbert*
Frances Reynolds Colbert
*Assistant Attorney General*
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-9226
(608) 294-2907 (Fax)
frances.colbert@wisdoj.gov

*Counsel for Wisconsin Department of Workforce Development*

**ROB BONTA**
ATTORNEY GENERAL OF CALIFORNIA

By: /s/ *Harald H. Kirn*
Harald H. Kirn
Christopher J. Kissel
*Deputy Attorneys General*
R. Matthew Wise
*Supervising Deputy Attorney General*
California Department of Justice
1300 I Street
Sacramento, CA 95814
(916) 210-6111
Harald.Kirn@doj.ca.gov

*Counsel for the State of California*

**PHILIP J. WEISER**
ATTORNEY GENERAL OF COLORADO

By: /s/ *Philip Barrett*
David Moskowitz
*Deputy Solicitor General*
Philip Barrett
*Assistant Attorney General*
Colorado Office of the Attorney General
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
david.moskowitz@coag.gov
philip.barrett@coag.gov

*Counsel for the State of Colorado*

**KATHLEEN JENNINGS**

**KWAME RAOUL**

ATTORNEY GENERAL OF DELAWARE

By: /s/ Ian R. Liston
Ian R. Liston
*Director of Impact Litigation*
Vanessa L. Kassab
*Deputy Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
Ian.Liston@delaware.gov

*Counsel for the State of Delaware*

ATTORNEY GENERAL OF ILLINOIS

By: /s/ Aleeza Strubel
Aleeza Strubel
*Complex Litigation Counsel*
Katharine P. Roberts
*Assistant Attorney General*
Office of the Illinois Attorney General
115 S. LaSalle St., 35th Floor
Chicago, IL 60603
Tel (773) 914-3046
aleeza.strubel@ilag.gov
Katharine.roberts@ilag.gov

*Counsel for Illinois Department of Employment Security*

**OFFICE OF THE GOVERNOR *ex rel.* ANDY BESHEAR**
IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE COMMONWEALTH OF KENTUCKY

By: /s/ S. Travis Mayo
S. Travis Mayo
*General Counsel*
Sam Flynn
*Chief Deputy General Counsel*
Laura C. Tipton
*Deputy General Counsel*
Office of the Governor
501 High Street
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
sam.flynn@ky.gov
laurac.tipton@ky.gov

*Counsel for the Office of the Governor*

**AARON M. FREY**
ATTORNEY GENERAL OF MAINE

By: /s/ Nancy Macirowski
Nancy Macirowski
*Assistant Attorney General*
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
Tel.: (207) 626-8800
Nancy.Macirowski@maine.gov

*Counsel for Maine Department of Labor*

**DANA NESSEL**
ATTORNEY GENERAL OF MICHIGAN

By: /s/ Daniel Ping
Daniel Ping
Neil Giovanatti

**JENNIFER DAVENPORT**
ATTORNEY GENERAL OF NEW JERSEY

By: /s/ Marcus Mitchell
Marcus Mitchell

*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 241-1050
PingD@michigan.gov
GiovanattiN@michigan.gov

*Counsel for the State of Michigan*

**RAÚL TORREZ**
ATTORNEY GENERAL OF NEW MEXICO

By: */s/ Aletheia V.P. Allen*
Aletheia V.P. Allen
*Solicitor General*
Seth McMillan
*Deputy Solicitor General*
New Mexico Department of Justice
408 Galisteo St
Santa Fe, NM 87501
AAllen@nmdoj.gov
SMcMillan@nmdoj.gov

*Counsel for New Mexico Department of Workforce Solutions*

**DAN RAYFIELD**
ATTORNEY GENERAL OF OREGON

By: */s/ Galen Knowles*
Brian Simmonds Marshall
*Senior Assistant Attorney General*
Galen Knowles
*Assistant Attorney General*
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
brian.s.marshall@doj.oregon.gov
galen.knowles@doj.oregon.gov

*Counsel for Oregon Employment Department*

Amanda Morejón
*Deputy Attorneys General*
New Jersey Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
Office: (609) 696-5223
Marcus.Mitchell@law.njoag.gov

*Counsel for the New Jersey Department of Labor and Workforce Development*

**LETITIA JAMES**
ATTORNEY GENERAL OF NEW YORK

By: */s/ Stephen Thompson*
Stephen C. Thompson
*Special Counsel*
Rabia Muqaddam
*Chief Counsel for Federal Initiatives*
28 Liberty St.
New York, NY 10005
(212) 416-6183
stephen.thompson@ag.ny.gov
rabia.muqaddam@ag.ny.gov

*Counsel for the New York State Department of Labor*

**PENNSYLVANIA DEPARTMENT OF LABOR AND INDUSTRY**

By: */s/ Emily Zeidman*
Emily Zeidman
*Policy Counsel*
Melissa Murphy
*Chief Counsel*
Office of General Counsel
Department of Labor & Industry
651 Boas Street, 10th Fl.
Harrisburg, PA 17104
ezeidman@pa.gov
melissamurphy@pa.gov

*Counsel for Pennsylvania Department of Labor and Industry*